# DANE v. JACKSON, TREASURER AND RECEIVER-GENERAL.

## ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 720.   Argued April 15, 1921.—Decided June 1, 1921.

1. This court cannot revise the taxing systems of the States in an attempt to produce a more just distribution of the burdens of taxation than that arrived at by the state legislatures.   P. 598.

2. A state tax law, to be in conflict with the Fourteenth Amendment, must propose, or clearly result in, such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation. P. 698.

3. In Massachusetts, the state and local taxes on real estate, tangible personal property and polls are laid and collected by the respective municipal subdivisions, each paying its quota to the State, but intangible personal property has been largely exempted from local taxation and the revenue therefrom is derived through a uniform income tax, laid and collected directly by the State, and is distributed to the subdivisions, not in proportion to the amounts of it contributed from each, but under a plan whereby, in increasing percentages through a series of years, and thereafter in its entirety, it is to be divided among them annually in proportion to the amounts of their respective state taxes, based on real estate, tangible personal property and polls.   (Gen. Acts 1919, c. 314.) *Held:* (1) That this plan of distribution, part of a complex scheme designed to correct inequalities and prevent evasion, cannot be interfered with, as in violation of the Fourteenth Amendment, upon the ground that, in operation, it returns to the plaintiff's town less income tax than he and its other inhabitants pay, and distributes the overplus to other subdivisions which may elect to use it for their local purposes not beneficial to those who paid it.   P. 569.   (2) It is to be presumed that the moneys so distributed will be devoted to lawful public uses. P. 601.

129 N. E. Rep. 606, affirmed.

THE case is stated in the opinion, *post*, 594.

*Mr. Philip Nichols*, with whom *Mr. Ralph A. Stewart* and *Mr. Charles O. Pengra* were on the brief, for plaintiff in error:

The Act of 1919 is unconstitutional in providing for the distribution of the income tax upon a rule of apportionment not based on the situs of the property upon which the tax was assessed.

No tax can be constitutionally levied except for the use of the district taxed. Cooley, Taxation, 3d ed., p. 225; Gray, Taxing Power, § 408; Desty, Taxation, §§ 9, 10; *Cole* v. *La Grange*, 113 U. S. 1, 8; *Thomas* v. *Gay*, 169 U. S. 264, 276; *Beach* v. *Bradstreet*, 85 Connecticut, 344, 357; *Farris* v. *Vannier*, 6 Dakota, 186; *State* v. *Lafayette Fire Insurance Co.*, 134 Louisiana, 78; *Sharpless* v. *Philadelphia*, 21 Pa. St. 147; *Robinson* v. *Norfolk*, 108 Virginia, 14, 16; *Chicago &c. Ry. Co.* v. *State*, 128 Wisconsin, 553, 661; and many other cases. The principle involved is fundamental and underlies all government that is based upon reason rather than upon force. *Norwich* v. *Hampshire County Commissioners*, 13 Pick. 60; *Duffy* v. *Treasurer & Receiver General*, 234 Massachusetts, 42, 51; *Opinion of Justices*, 234 Massachusetts, 612, 620.

The Massachusetts income tax is a tax on property having its location in the various cities and towns of the Commonwealth. It is, at least as to its most important part, a property tax, and not an excise. *Opinion of the Justices*, 220 Massachusetts, 613, 623; *Tax Commissioner* v. *Putnam*, 227 Massachusetts, 522, 531; *Kimball* v. *Cotting*, 229 Massachusetts, 541, 543; *Maguire* v. *Tax Commissioner*, 230 Massachusetts, 503, 512.

This view of the character of a tax levied on the income of certain specified classes of property as distinguished from a tax on the income from professions, trades, employments, or business, or from a tax on income of every description, is in accord with the views expressed by this court. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S.

429.; 158 U. S. 601; *Brushaber* v. *Union Pacific R. R. Co.,* · 240 U. S. 1; *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103.

Whether the tax imposed by § 5 of the act upon income derived from professions, employments, trade, or business is an excise or a property tax is perhaps open to doubt, although the tax which it replaces, and which had been imposed continuously since the first settlement of the colony, appears to have been considered a property tax. See *Opinion of the Justices,* 220 Massachusetts, 613, 624, 625. But in any event the more important tax, the tax on the income of intangible property, is a property tax.

All of the property subject to the income tax has a definite situs in some city or town within the Commonwealth. The principles of the law of situs which govern the taxation of property are applicable to the taxation of income. If an income is to be taxed by a State, the person in receipt of the income must have a domicil within the State, or the property or business out of which the income arises must be situated within the State, so that the income may be said to have a situs therein. *State* v. *Wisconsin Tax Commission,* 161 Wisconsin, 111; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37; *Travis* v. *Yale & Towne Manufacturing Co.,* 252 U. S. 60; *State* v. *Eberhardt,* 158 Wisconsin, 20.

While, as between different municipalities in the same State, it is competent for the legislature to modify the common-law rules of situs, and to give to particular classes of property any situs it deems best, this principle is subject to the limitation that there must be some appreciable relation between the municipality exacting the tax and the person upon whom the burden is cast, either directly or by reference to the property taxed, from which there can reasonably be seen reciprocal duties to accord benefits on the one hand, and to respond therefor on the other. *Teagan Transportation Co.* v. *Detroit,*

139 Michigan, 1; *Chicago &c. Ry. Co.* v. *State,* 128 Wisconsin, 553, 665.

A very substantial part of this income is constitutionally taxable in Massachusetts only because the person receiving the income lives there. It seems clear that all of the income must necessarily have a situs in some city or town in that State.

The income tax is not levied for the use of the district taxed.

While municipal corporations, in Massachusetts as elsewhere, are not permitted to levy taxes or to expend money except for the public use, the distinction between expenditures which a municipal corporation undertakes as an agent of the State for the accomplishment of general public purposes and those which it undertakes in its private and proprietary capacity with special reference to the benefit of its own inhabitants is as fully recognized in Massachusetts as in any other State. *Mount Hope Cemetery* v. *Boston,* 158 Massachusetts, 509, 519; *Bolster* v. *Lawrence,* 225 Massachusetts, 387.

The General Laws of Massachusetts authorize cities and towns to expend money for many functions which are universally recognized as undertaken by them in their private and proprietary capacity for the use and benefit of their own inhabitants, and not for the use and benefit of the public as a whole.

A city or town may expend money paid over to it under the statute now in controversy for any of those purposes, although the greater part of the money may have been raised by the taxation of property situated in other cities and towns; and, conversely, a large proportion of the taxes raised upon intangible property located in one city or town may be expended for the private and proprietary purposes of inhabitants of other cities and towns.

If it had been expressly provided by statute that the City of Springfield might establish a municipal lighting

plant to furnish electric light to its inhabitants at lower rates than could be obtained from a private enterprise, and that the town of Brookline should be assessed for the cost of the undertaking the sum of $225,000, no one would deny that the statute was unconstitutional as a plain abuse of legislative power. *Tippecanoe County Commissioners* v. *Lucas*, 93 U. S. 108, 115; *Opinion of the Justices*, 234 Massachusetts, 612.

It is, however, contended by the defendant in error that such a result can be constitutionally effected by the device of interposing a set of state officials to collect and distribute the tax; that the tax is a state, and not a municipal, tax, and that the legislature in distributing the proceeds of the tax to the various cities and towns of the State is merely appropriating for public purposes funds raised by taxation throughout the State.

The statement that this is a state tax (*Duffy* v. *Treasurer & Receiver General*, 234 Massachusetts, 42) is entirely unwarranted. It is admittedly levied wholly for the use of the several municipalities, and in no degree for the use of the State, and the officers of the State in assessing, collecting, and distributing the tax are acting merely as agents of the several cities and towns for whose use the tax is levied.

This view of the nature of the tax is corroborated by the practical construction put upon it by both administrative and legislative branches of the state government.

The plaintiff in error's position is in substance this: So far as the Constitution of the United States is concerned, the legislature of a State may abolish all the cities, towns and other municipal subdivisions and provide for the administration of the affairs of the whole State by state officers and by means of appropriations made directly by the legislature from taxes levied throughout the State as a whole. But so long as the legislature sees fit to allow municipal corporations to exist, and to exercise powers of a private and commercial character for the use and

benefit of their own citizens and not for the use and benefit
of the State as a whole, and to appropriate funds for the
exercise of such powers through their own municipal
legislative bodies, it is not competent for the legislature,
directly or indirectly, through any means, device, or
instrumentality whatever, to provide for the taxation
of persons or property remote from the municipal limits
for the use of such a municipal corporation.

The method of distribution adopted in the 1919 statute
is not in accord with the established practices of constitu-
tional governments. *Murray's Lessee* v. *Hoboken Land
& Improvement Co.*, 18 How. 272.

A reasonably careful study of the statutes and decisions
of other jurisdictions discloses no instances in which a
property tax has been collected by a State or county and
distributed to the constituent towns, in which the dis-
tribution has not been made strictly in accordance with
the source from which the tax was derived.

The Act of 1919 is unconstitutional in establishing a
purely arbitrary discrimination between taxpayers of
different towns. *Sunday Lake Iron Co.* v. *Wakefield*, 247
U. S. 350, and other cases.

*Mr. William Harold Hitchcock*, with whom *Mr. J.
Weston Allen*, Attorney General of the State of Massachu-
setts, was on the brief, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

In this proceeding we are asked to review and reverse
a judgment of the Supreme Judicial Court of Massachu-
setts, holding valid an act of the General Court (General
Acts, 1919, c. 314), providing for the distribution of the
proceeds of an income tax among the towns, cities and
taxing districts of that State, against the contention that
it violates the due process and equal protection of the laws

clauses of the Fourteenth Amendment to the Constitution of the United States.

By amendment to the constitution of Massachusetts, approved by the people in 1915 (XLIV), the General Court was given power to impose a tax at different rates upon income derived from different classes of property but at a rate uniform throughout the Commonwealth on incomes derived from the same class of property and to exempt the property producing such income from other taxes.

Pursuant to this authority, a law was enacted in 1916 (General Acts, 1916, c. 269), which it is sufficient to describe as taxing, with exceptions negligible here: income received from bonds, notes, money at interest and debts due the person paying the tax; dividends on shares of any corporations not organized under the laws of Massachusetts; dividends on shares in partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares; and income derived from professions, employments, trade or business. Intangible property, the income from which is taxed by the act, is practically exempted from local taxation.

The validity of this act is not assailed.

Prior to the enactment of this law, the taxing subdivisions of the State had taxed the real estate and tangible and intangible personal property, within their respective jurisdictions, for both state and local purposes, and the exemption from local taxation of intangible property, provided for in the act, necessarily resulted in an important reduction in their revenues.

The proceeds of the income tax thus provided for were distributed by temporary acts applicable only to the years 1917 and 1918, but in the year 1919 the act was passed, the validity of which is assailed in this proceeding, which provides, in substance: that the State Treasurer shall pay to each city, town and district, from the income tax

collected for the year 1919, an amount equal to ninety per cent. of the difference between the average amount of the tax levied on tangible and intangible personal property therein in the years 1915 and 1916 and the average that would be produced by a tax upon the personal property actually assessed therein for the years 1917 and 1918 at the average of the rates of taxation prevailing therein in 1915 and 1916. In each succeeding year, until and including the year 1927, the amount payable was reduced to an amount ten per cent. less than it was for the next preceding year. Any amount collected in any year prior to 1928, in excess of the required payments must be distributed to the cities, towns and districts of the State in proportion to the amount of the state tax imposed upon each for such year, and in 1928 and thereafter the whole of the amount of the income tax must be so distributed each year.

It is obvious that it was the purpose of this act to reimburse the various taxing subdivisions until the year 1928 to the extent thought necessary to supply the loss which each would sustain by the withdrawal from its taxing power of the intangible property the income of which was taxed by the State, and that prior to 1928 any excess of the income tax fund over such requirements, and beginning with that year and continuing thereafter the whole of that fund should be distributed to such subdivisions in proportion to the amount of the state tax paid by each.

The petition in the case is one for mandamus and the essential allegations of it are: that the petitioner, an inhabitant of the town of Brookline, in the years 1919 and 1920 derived income from intangible personal property and otherwise which rendered him subject to the provisions of the income tax act of 1916; that the state tax in Massachusetts is imposed upon towns and cities in proportion to the value of the real estate and tangible personal property and polls taxable therein, without regard

to intangible property or incomes taxed; that a sum in excess of $1,000,000 was raised in the year 1920 by the taxation of the inhabitants of Brookline upon incomes derived during the year 1919 from intangible property located in that town and on other income earned therein, and that as great an amount will be in like manner raised in 1921; that under the distribution statute of 1919 there will be returned to the town of Brookline not more than $500,000 in the year 1920, and in each year thereafter a less amount until in the year 1928 not more than $250,000 will be returned to it, while other towns, having greater real estate and tangible personal property valuation for taxation, will receive much more than their inhabitants will have contributed to the income tax fund; and that such payments may be used by the cities and towns receiving them, if they so elect, for the exclusive use and benefit of their own inhabitants for local and "proprietary" purposes, which would not in any degree contribute to the benefit of the petitioner, or of the inhabitants of Brookline or of the citizens generally of the Commonwealth. Upon these allegations a writ of mandamus, commanding the respondent not to distribute any of the income tax collected in the years 1920 or 1921, was prayed for.

Upon demurrer the petition was dismissed.

This statement of the case shows that it is admitted: that the income tax act of 1916 is a valid law; that the contention is, only, that the act of 1919, providing for distribution of the tax, is unconstitutional; and that this contention rests wholly upon the allegation of the petition that such amount of the income tax collected by the State from the plaintiff in error and from other inhabitants of Brookline as may be returned to any other subdivision thereof, may, if the subdivision so elects, be used for local or "proprietary" purposes such that no benefit whatever will accrue from the expenditure of the tax to the plaintiff

in error or to other inhabitants of the town of Brookline
or to the inhabitants of the State in general.

It is argued that from these conditions it must follow
that the plaintiff in error and other inhabitants of Brook-
line are taxed for the exclusive benefit of the inhabitants
of other subdivisions of the State, and that this violates
the due process of law clause, or, if not that, the equal
protection of the laws clause, of the Fourteenth Amend-
ment to the Constitution of the United States, and that
therefore the proposed distribution of the tax should be
restrained.

The relation of the power of the federal courts to the
taxing systems of the States has been the subject of much
discussion in the opinions of this court, notably in the
following cases: *McCulloch* v. *Maryland,* 4 Wheat. 316,
428 to 432; *Providence Bank* v. *Billings,* 4 Pet. 514, 563;
*State Tax on Foreign-Held Bonds,* 15 Wall. 300, 319;
*Davidson* v. *New Orleans,* 96 U. S. 97, 105; *Kirtland* v.
*Hotchkiss,* 100 U. S. 491, 497; *Memphis Gas Light Co.* v.
*Shelby County,* 109 U. S. 398, 400; *Bell's Gap R. R. Co.* v.
*Pennsylvania,* 134 U. S. 232, 237, 238; *Merchants' & Manu-
facturers' Bank* v. *Pennsylvania,* 167 U. S. 461, 463, 464;
*Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592,
615, 616; *Travellers' Insurance Co.* v. *Connecticut,* 185
U. S. 364, 371; *Wagner* v. *Baltimore,* 239 U. S. 207, 220.

While the nature of the subject does not permit of much
finality of general statement, it may plainly be derived
from the cases cited that since the system of taxation has
not yet been devised which will return precisely the same
measure of benefit to each taxpayer or class of taxpayers,
in proportion to payment made, as will be returned to
every other individual or class paying a given tax, it is
not within either the disposition or power of this court
to revise the necessarily complicated taxing systems of
the States for the purpose of attempting to produce what
might be thought to be a more just distribution of the

· burdens of taxation than that arrived at by the state legislatures (4 Pet. 517; 15 Wall. 319; 109 U. S. 400; 185 U. S. 371, *supra*); and that where, as here, conflict with federal power is not involved, a state tax law will be held to conflict with the Fourteenth Amendment only where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation—"to spoliation under the guise of exerting the power of taxing." (134 U. S. 237; 173 U. S. 615; 239 U. S. 220, *supra*.) For other inequalities of burden or other abuses of the state power of taxation, the only security of the citizen must be found in the structure of our Government itself. So early as 4 Pet. 563, *supra*, it was said by Chief Justice Marshall: "This vital power [of taxation] may be abused; but the Constitution of the United States was not intended to furnish the corrective for every abuse of power which may be committed by the state governments. The interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security, where there is no express contract, against unjust and excessive taxation; as well as against unwise legislation generally."

The application of this summary of the law renders our conclusion not doubtful.

The income tax involved is uniform in its application to all income within the description of the act of all inhabitants of the State without regard to the taxing subdivision in which they may reside. It is collected by the State and the capital value producing the tax is practically exempted from other taxation. The tax was authorized by the people of the State and the act was given form by the legislature, for the purpose of correcting flagrant inequalities of taxation, resulting from what the Supreme Judicial Court, in the opinion in this case, called the "colonization" of wealthy owners of intangible securities in

towns and cities which had exceptionally low rates of
taxation "brought about by avoidance and evasion,
legal and illegal, of the tax laws prevailing before the enact-
ment of the income tax law." Report to the Senate and
House of Representatives of Massachusetts by "The
Joint Special Committee on Taxation," January 31, 1919.
The report just referred to was made after an elaborate
study of the subject of the distribution of this income
tax, in the progress of which largely attended public
hearings were held in many cities of the State, and it
recommended the law assailed, in substantially the form
in which it was enacted. The plan of returning the tax
to the various taxing districts, in which those who paid
it resided, which is so strongly urged in argument, was
carefully considered and was rejected, as expensive and
difficult, if not impracticable, of application, and as cal-
culated to ignore the considerations which led to the en-
actment of the law and to restore the evils and inequalities
of taxation which it was devised to correct. It is also
apparent that this distribution law should not be con-
sidered as an isolated provision but as an important part,
which it clearly is, of an elaborate and involved system
of state taxation, which would be seriously affected by
the granting of such a writ of mandamus as is prayed for.

Accepting as true, as we must, the allegation of the
petition, admitted by the demurrer, that the local sub-
divisions of the State may, "if they so elect," devote the
money derived from the income tax through the dis-
tribution provided for in the act assailed, to purposes
which might not confer any certain benefit upon the plain-
tiff in error or persons in like situation, yet, it must be
accepted on the other hand that it is entirely clear that
there are many purposes to which these subdivisions may
devote the money, "if they so elect," which would be of
such state-wide influence that the plaintiff in error and
those similarly situated would very certainly be benefited

by the expenditure of it. It must be said also in this case, as was said by the Supreme Judicial Court of Massachusetts, in the decision of a similar case, *Duffy v. Treasurer and Receiver General,* 234 Massachusetts, 42, "There is nothing on this record to justify the assumption that the several municipalities design to devote to other than a public use any portion of the income tax thus distributed to them. Every presumption is in favor of legality in the absence of evidence to the contrary." This presumption of legality is a sound and strong one, and is amply sufficient to prevail over the effect of the admitted allegation of the petition.

The case presented is clearly not one of that extreme inequality in taxation of which the federal courts should lay hold, but involves rather a question of state policy, of a character which the people have been satisfied to leave to the judgment, patriotism and sense of justice of representatives in their state legislature.

The judgment of the Supreme Judicial Court of Massachusetts is

*Affirmed.*