[Civ. No. 30014.   Second Dist., Div. Three.   Sept. 21, 1966.]

Estate of MARION ELIZABETH ROGERS, Deceased. J. FRANK ROGERS, Petitioner and Respondent, v. ALAN CRANSTON, as State Controller, etc., Claimant and Appellant.

Charles J. Barry, Walter H. Miller, Joseph D. Lear, Barbara Metcalf and Phyllis Kelly Fairbanks for Claimant and Appellant.

Harry E. Barnes for Petitioner and Respondent.

Katz & Granof, Leon Katz and Herman S. Palarz as Amici Curiae on behalf of Petitioner and Respondent.

KAUS, J.—Respondent, a doctor of medicine, moved his family from Ohio to California in 1955. He brought certain funds with him, representing his earnings in Ohio. The parties agree that these earnings were earned during his marriage;

therefore they were "quasi-community property" as defined in Revenue and Taxation Code, section 15300. These funds were his separate property under the law of Ohio. In California he used them to purchase various parcels of real property and placed title in joint tenancy between himself and his wife who furnished no part of the consideration. She died on July 23, 1964. Doctor Rogers then petitioned the superior court to establish the fact of his wife's death and to determine whether any inheritance tax became payable. The parcels were appraised at roughly $200,000 and the appellant Controller claimed an inheritance tax of about $3,000, basing such claim on section 13672 of the Revenue and Taxation Code, which provides as follows: "Joint tenancy in quasi-community property. Where husband and wife hold property in joint tenancy, or deposit property in a bank or similar depository in their join⁴ names subject to payment to either or the survivor, and such property had its source in quasi-community property of the marriage of the husband and wife, then upon the death of either of them, such property *shall be treated for inheritance tax purposes as if one-half of the consideration for the acquisition of such property were furnished by each spouse.*

"For the purpose of this section, the term 'quasi-community property' has the meaning given that term by Section 15300." (Italics added.)

The superior court found that the statute violated not only the equal protection clause of the Constitution of the United States but also article I, sections 11 and 21[1] and article IV, section 25, subsection Tenth and Thirty-third[2] of the California Constitution. The court then entered an order determining that no tax was due.

The constitutional issue, as formulated by respondent both in the superior court and before us, is as follows: "The said

[1]"All laws of a general nature shall have a uniform operation." (Cal. Const., art. I, § 11.)

"No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (Cal. Const., art. I, § 21.)

[2]"The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:

"Tenth—For the assessment or collection of taxes.

"Thirty-third—In all other cases where a general law can be made applicable." (Cal. Const., art. IV, § 25, subsections Tenth and Thirty-third.)

104

statute, without any fair and substantial reason relating to the general object and legislative purpose to be accomplished, arbitrarily and unreasonably attempts to distinguish between joint tenancy property acquired with property which had its source outside the State of California and joint tenancy property acquired with property which had its source within the State of California, and to arbitrarily and unreasonably place joint tenancy property acquired with property which had its source outside the State of California in a new and special class of property to be taxed for inheritance tax purposes, while other joint tenancy property of exactly the same kind and nature is excluded from taxation for inheritance tax purposes by reason of the operation of Sections 13671 and 13671.5 of the Revenue and Taxation Code of the State of California.''

Section 13671,[3] which applies to separate property, allows the surviving joint tenant to prove that the deceased did not contribute any part of the consideration for the acquisition of the joint tenancy. Upon such proof no tax is levied. Section 13671.5 declares that if a husband and wife place community property in their joint names, the joint tenancy shall be treated as if it were community property.

At the time of Mrs. Roger's death community property going to a surviving spouse outright was not subject to the inheritance tax. (Rev. & Tax. Code, § 13551.) It is therefore correct that the inheritance tax claimed to be due results from the facts that the funds used to purchase the parcels involved were quasi-community property and not separate or community. This alone does not deny him equal protection, if there is a ''natural, intrinsic, or constitutional distinction which reasonably justifies difference in treatment.'' (*Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].) In the field of taxation the Legislature has wide discretion to classify. As the United States Supreme Court said with reference to the California inheritance tax: ''But we do not find it necessary to discuss the issue thus raised, for it has been repeatedly held by this court that the power of testamentary disposition and the privilege of inheritance are subject to state taxation and state regulation, and that regulatory taxing provisions, even though they produce inequalities in taxation, do not effect an unconstitutional taking of property, unless, as was said in *Dane* v. *Jackson,* 256

---

[3] All references to code sections are to the Revenue and Taxation Code, unless expressly otherwise noted.

U.S. 589, 599 [41 S.Ct. 566, 65 L.Ed. 1107, 1113], the taxing statute 'results in such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation,— ''to spoliation under the guise of exerting the power of taxing.'' ' . . . Even assuming that a state does not, under the Constitution of the United States, possess unlimited power to curtail the power of disposition of property at death, or the privilege of receiving it by way of inheritance, there is nevertheless no constitutional guaranty of equality of taxation. The power of the states to discriminate in fixing the amount and incidence of taxation upon inheritances is undoubted. . . .

▇ The taxing statute may, therefore, make a classification for purposes of fixing the amount or incidence of the tax, provided only that all persons subjected to such legislation within the classification are treated with equality, and provided further that the classification itself be rested upon some ground of difference having a fair and substantial relation to the object of the legislation. *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U.S. 283 [18 S.Ct. 594, 42 L.Ed. 1037], *supra; F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412 [40 S.Ct. 560, 64 L.Ed. 989].

'' 'It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their Constitution.' *Bell's Gap R.R. Co.* v. *Pennsylvania,* 134 U.S. 232, at p. 237 [10 S.Ct. 533, 33 L.Ed. 892, 895].'' (*Stebbins* v. *Riley,* 268 U.S. 137, 140-143 [45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454].)

It should be noted at this point what this case is not about: there is no problem about the Legislature attempting to tax an illusory transfer. On the record below, before her death Mrs. Rogers had a presently vested interest as a true joint tenant, an interest which she could have converted into a tenancy in common at any time by a simple conveyance. When she died Doctor Rogers' wealth increased by the exact amount which

the state attempts to tax. What this case is about is the power of the state to make a distinction between joint tenancies which were acquired with quasi-community property on the one hand and those purchased with separate or community funds on the other.

The continuing effort of our Legislature ''to apply community property concepts to the . . . common-law theory of matrimonial rights'' is traced in *Addison* v. *Addison,* 62 Cal.2d 558, 562-566 [43 Cal.Rptr. 97, 399 P.2d 897], and need not be repeated here. The statute under attack in this case is a part of the same chapter of the 1961 statutes (Stats. 1961, ch. 636) which also contained the legislation which was upheld in *Addison.* This does not automatically save section 13672, but it does indicate that we should not look at the section in isolation, but against its historical and legislative background.

Upon the recommendation of the California Law Revision Commission the Legislature, in 1957, enacted chapter 490 of the statutes of that year. Very briefly summarized this legislation accomplished the following:

1. An amendment to section 201.5 of the Probate Code provided, in effect, that separate personal property and California real property which would have been community property if the parties had been domiciled in California shall descend and be subject to testamentary disposition in the same manner as community property. The surviving spouse was given powers to set aside one-half of certain *inter vivos* transfers of the decedent, if they were of such a nature as to amount to an attempt to avoid the survivor's expectancy. (Prob. Code, § 201.8.) These powers are, however, far less extensive than the wife's powers to set aside certain transfers of true community property. (Civ. Code, §§ 172, 172a.)

2. The legislation provided for a probate homestead out of quasi-community property under certain circumstances. (Prob. Code, § 661.)

3. It made certain changes to the Revenue and Taxation Code which provided in effect that the half of the quasi-community property to which the surviving spouse was entitled under section 201.6 of the Probate Code or which he or she could elect to take against the decedent's will (Prob. Code, § 201.6) was not subject to the inheritance tax. (Rev. & Tax. Code, §§ 13555, 13552.5, 13554.5, 13556.5.) [4]

---

[4] Until 1957, section 13555 provided as follows:
''For the purpose of this part, community property includes any per-

Four years later the Legislature again dealt extensively with quasi-community property. This legislation (Stats. 1961, ch. 636), in the main, accomplished the following:

1. It repealed that portion of section 164 of the Civil Code which had been held unconstitutional in *Estate of Thornton,* 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343].

2. It provided for a duty on the part of the wife to support an indigent husband out of quasi-community property under certain conditions. (Civ. Code, § 176.)

3. It made certain provisions with respect to homesteads and probate homesteads out of quasi-community property. (Civ. Code, §§ 1237.5, 1238, 1265; Prob. Code, §§ 661, 663.)

4. It made certain changes to the Civil Code which provided, in effect, that in the event of a divorce or decree of separate maintenance, the court had the same powers with respect to quasi-community property as it had with true community property. It is this portion of the legislation which was held constitutional in *Addison* v. *Addison, supra.*

5. Finally—and this we consider the vital aspect for our purposes—it made certain changes to the California gift tax, all of which were beneficial to owners of quasi-community property, and enacted section 13672, which is under attack here.

We think it is worth while to quote in full certain portions from the recommendation of the Law Revision Commission to the Legislature, which enacted the proposed legislation without change:

"*Gift Tax.* New sections should be added to the Revenue and Taxation Code and other sections of that code should be amended to treat quasi-community property substantially like community property for purposes of the California gift tax. For inheritance tax purposes, quasi-community property is now treated substantially like community property.[5] Accordingly, the recommended statute includes these provisions:

"(a) A new Section 15300 is added to the Revenue and Taxation Code to define quasi-community property.

"(b) Section 15301 of the Revenue and Taxation Code is

sonal property acquired while domiciled elsewhere, which would not have been the separate property of either spouse if acquired while domiciled in this State."

[5]This statement is no longer true. Chapter 2189 of the 1961 statutes, not sponsored by the Law Revision Commission, changed section 13551 to provide, in effect, that no inheritance tax is due on community property transferred to a spouse. Section 13555 taxing one-half of quasi-community property transferred to a spouse is still the law.

amended *to exclude one-half of the property from the gift tax in the case of a gift of quasi-community property by one spouse to the other.* The same reasons that justify exclusion of one-half of the property from tax in the case of a gift of community property by one spouse to the other would appear to be applicable to a similar gift of quasi-community property.

"(c) Analogous reasoning justifies the enactment of new Section 15302.5 of the Revenue and Taxation Code giving the spouses the election to treat a gift of quasi-community property to a person other than either of the spouses as being made one-half by each spouse. . . .

"(d) A new Section 15303.5 is added to the Revenue and Taxation Code to exclude from the gift tax a transfer of quasi-community property into community property *or into property held by the spouses as joint tenants or as tenants in common.* For inheritance tax purposes, quasi-community property is now treated substantially like community property upon the death of the acquiring spouse. Thus, under the present law if the acquiring spouse wished to convert his quasi-community property into true community property during his lifetime, he must pay a gift tax; and, upon his death his surviving wife pays the same inheritance tax she would have paid had no conversion been made. To avoid this, the Commission recommends that no gift tax be imposed when quasi-community property is converted into true community property. Because no gift tax is imposed when community property is converted to any other form of co-ownership between the spouses, a similar conversion of quasi-community property should also be excluded from the gift tax. . . .

"(e) A new Section 13672 is added to the Revenue and Taxation Code so that property held by a husband and wife in joint tenancy which had its source in quasi-community property will be treated for inheritance purposes as if one-half of the consideration for the acquisition of such property were furnished by each spouse.

"The recommended changes in the gift tax law are favorable to the taxpayer and it is unlikely that any question concerning their constitutionality will ever be raised. In any case, the Commission is satisfied that the recommended changes are constitutional." (3 Cal. Law Revision Com. Rep., pp. I-11-12. Italics added.)

It is thus evident that the changes to the gift tax, all of which benefited owners of quasi-community property, and the enactment of section 13672 were motivated by the same

rationale: that for the purposes of these enactments the non-acquiring spouse is deemed to be an owner of one-half of the property involved. While this may be a fiction to some extent, it is a fiction beneficial to the taxpayer in the case of the gift tax and detrimental only where the quasi-community property is converted into a joint tenancy and the statistically less likely event occurs, namely that the wife—usually the non-acquiring spouse—predeceases the husband.

It is true that here a tax is levied on joint tenancy property acquired with quasi-community property, which would not be levied had the consideration been separate or community. If California discriminated against respondent merely because he made his money in Ohio and not in California, this being the reason why the funds were not community property, or if California taxed separate property differently merely because such separate property was not acquired in this state, the constitutional problems which troubled the trial court would also disturb us, but such is not the case. Our Legislature, with a wary eye at the Constitution of the United States, has attempted, in certain areas, to assimilate the rights of the nonacquiring spouse in property acquired during a marriage elsewhere to the rights of California domiciliaries. The result of this process has inevitably been that quasi-community property has become *sui generis*. It is not community property. The powers of management, control and disposition of the husband are vastly greater. It is not like other separate property, because it is burdened with the wife's expectancy in the event of the husband's death and her contingent rights in the event of a divorce or decree of separate maintenance. The constitutionality of this differentiation was settled in *Addison* v. *Addison, supra*. There is therefore ample reason for permitting a legislative classification.

If, in the course of the Legislature's attempt at assimilation, it decides to extend to the taxpayer an advantage in the application of our gift tax based on the theory that a gift of quasi-community property from one spouse to the other is only a gift of one-half of the value of such property—the expectancies of the donee being such that it would be inequitable to tax the entire value—we see no invidious discrimination against former nonresidents if the same theory is applied to the inheritance tax in the case where quasi-community funds are used to purchase property, title to which is taken in joint tenancy. While it does not appear that respondent personally has benefited from those portions of the 1961 legis-

110

lation which favor quasi-community property, this does not invalidate the unfavorable portion as applied to him. As was said in *Phelps* v. *Board of Education,* 300 U.S. 319, 324 [57 S.Ct. 483, 81 L.Ed. 674] : ''Incidental individual inequality resulting in some instances from the operation of the plan does not condemn it as an unreasonable or arbitrary method of dealing with the problem of general salary reductions or deny the equality guaranteed by the Fourteenth Amendment.''[6]

Our discussion, so far, has been directed at respondent's equal protection argument. We have noted that the trial court held section 13672 unconstitutional under various provisions of our state Constitution. It seems to us that our courts have consistently applied the same criteria to the California constitutional provisions involved, as are applicable to the equal protection clause. (*Department of Mental Hygiene* v. *Kirchner,* 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321]; *Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].) No further discussion is therefore necessary.

Amici curiae have filed an excellent brief on behalf of respondent. It has been most helpful to us in understanding the constitutional and legislative background of the 1957 and 1961 acts. Its thrust, however, is that in order to avoid unconstitutionality of section 13672, we should give it a grammatically very strained if not impossible reading by interpreting it to impose an inheritance tax only on the death of the acquiring spouse. Since we hold the statute to be constitutional, we need not read such an exception into it.

The order determining that no inheritance tax is due is reversed. ▇ Appellant has also appealed from the judgment establishing the fact of death. As we interpret that document, it merely recites the previous order finding that no inheritance tax was due. Appellant is therefore not aggrieved by it and the appeal therefrom must be, and hereby is, dismissed. (*Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 273 [42 Cal.Rptr. 89, 398 P.2d 129].)

Ford, J., concurred.

SHINN, P. J.—I dissent.

I am not convinced there is a constitutional basis for taxing the interest of Mrs. Rogers in the joint tenancy property.

Section 13671.5 of the Revenue and Taxation Code provides

---

[6]We believe that the *Phelps* case also answers a possible argument that as far as respondent is concerned the 1961 legislation did not extend any benefits because even before then section 15104.5 permitted a husband to

that property held by husband and wife in joint tenancy which had its source in community property, upon the death of either shall be treated for inheritance tax purposes as community property. As such the interest of the deceased spouse is not subject to a tax. (§ 13551.)

Section 13672 imposes a tax upon the joint tenancy interest of a deceased spouse if the funds with which the joint tenancy property was acquired were quasi-community property as defined by section 15300. This discrimination is accomplished by the introduction of a fiction that for the purpose of inheritance taxation it will be conclusively presumed that each spouse contributed one-half of the quasi-community funds. This special and unique interest is created for the sole purpose of rendering a share of the joint tenancy property subject to an inheritance tax upon the death of either spouse.

That this was the sole purpose seems clear when the Legislature has in other respects abolished the distinction between community property and quasi-community property. At least I can discover no other reason for it and in my opinion the discrimination is arbitrary, unreasonable and without a basis in constitutional principles.

Respondent's petition for a hearing by the Supreme Court was denied November 16, 1966.

---

acquire joint tenancy real property with his separate funds without payment of a gift tax, except at his option. The question is not whether the legislation extended gift tax benefits to the particular transfers made by respondent, but whether the classification is reasonable.