728

Estate of LEONARD M. SPERRY, Deceased. HOUSTON I. FLOURNOY, as Controller, etc., Objector and Appellant, v. ROSE ADLER SPERRY, Petitioner and Respondent.

Joseph D. Lear, Walter H. Miller and Phyllis Kelly Fairbanks, for Objector and Appellant.

Nossaman, Waters, Scott, Krueger & Riordan, Paul T. Guinn, and Boyd S. Lemon for Petitioner and Respondent.

STEPHENS, J.—Leonard M. Sperry, domiciled in California, died on September 11, 1963, leaving surviving his spouse, Rose Sperry. At time of death, Mr. Sperry held in joint tenancy with Mrs. Sperry certain real and personal property having an appraised value of $186,850.40. All of this joint tenancy property had derived from Mr. Sperry's personal earnings during the marriage and during a period that the couple were domiciled outside of California. It is conceded that all of this joint tenancy property is such as is defined in Probate Code, section 201.5[1] and in Revenue and Taxation Code, section 15300.[2]

In preparing the Report of Inheritance Tax Appraiser, the

---

[1]§ 201.5. "Upon the death of any married person domiciled in this State one-half of the following property in his estate shall belong to the surviving spouse and the other one-half of such property is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse: all personal property wherever situated and all real property situated in this State heretofore or hereafter acquired:

"(a) By the decedent while domiciled elsewhere which would have been the community property of the decedent and the surviving spouse had the decedent been domiciled in this State at the time of its acquisition; or

"(b) In exchange for real or personal property, wherever situated, acquired other than by gift, devise, bequest or descent by the decedent during the marriage while domiciled elsewhere.

"All such property is subject to the debts of the decedent and to administration and disposal under the provisions of Division 3 of this code.*

"As used in this section personal property does not include and real property does include leasehold interests in real property. (As amended by Stats. 1957, c. 490, p. 1521, § 1; Stats. 1961, c. 636, p. 1844, § 22.)"

[2]§ 15300. "For the purposes of this chapter, property is 'quasi-community property' if it is heretofore or hereafter acquired:

"(a) By either spouse while domiciled elsewhere and would have been the community property of the husband and wife had the spouse acquiring

---

*Section 300 et seq.

appraiser excluded one-half of the net value of the said joint tenancy property under Revenue and Taxation Code section 13672.[3] In addition, there was excluded one-half of the remaining one-half of the net value under Revenue and Taxation Code section 13554.5.[4] The result is that in the report an inheritance tax was imposed on one-fourth of the net value of the property. Objection by the controller is made to the report, and specifically to the exclusion as made in the report under Revenue and Taxation Code section 13554.5. The probate court approved the report of the inheritance tax appraiser. The appeal is from this order.

Generally, inheritance taxation of joint tenancy property is governed by section 13671,[5] which bases the tax incidents on the portion of the consideration contributed by each joint tenant. To the extent consideration is provided by the deceased joint tenant, passage to the surviving joint tenant at death is considered a transfer for inheritance tax purposes. There is a qualification of this general statutory rule, however, in the case of joint tenancy property which had as its source what has been referred to as quasi-community property.

Section 13672 recognizes and imposes an exception, for inheritance tax purposes, upon joint tenancy property created from quasi-community property. The history and constitutionality of section 13672 has been dealt with in considerable detail in *Estate of Rogers*, 245 Cal.App.2d 101 [53 Cal.Rptr. 572], and need not be restated in the instant opinion. As we

the property been domiciled in this State at the time of its acquisition; or

"(b) In exchange for real or personal property, wherever situated, acquired other than by gift, devise, bequest or descent by either spouse during the marriage while domiciled elsewhere. (Added Stats. 1961, c. 636, p. 1843, § 16.)"

[3] § 13672. "Where husband and wife hold property in joint tenancy, or deposit property in a bank or similar depository in their joint names subject to payment to either or the survivor, and such property had its source in quasi-community property of the marriage of the husband and wife, then upon the death of either of them, such property shall be treated for inheritance tax purposes as if one-half of the consideration for the acquisition of such property were furnished by each spouse.

"For the purposes of this section, the term 'quasi-community property' has the meaning given that term by Section 15300. (Added Stats. 1961, c. 636, p. 1844, § 21.)"

[4] § 13554.5. "Where property to which Section 201.5 of the Probate Code is or would have been applicable is transferred from one spouse to the other within the provisions of Chapter 4 of this part other than by will or the laws of succession, the property transferred is subject to this part up to a value not exceeding one-half of the clear market value thereof. (Added Stats. 1957, c. 490, p. 1523, § 8.)"

[5] All section references are to the Revenue and Taxation Code unless otherwise noted.

have noted, by virtue of the general rule (§ 13671), under the facts of this case, the noncontributing joint tenant would have considered as transferred to him, as survivor joint tenant, the entire value of the property so held. Recognizing the community contribution by a spouse who would not otherwise be considered a "contributing party" in the property placed in joint tenancy, by statutory edict, a presumption of equal contribution is declared where joint tenancy property had its source in quasi-community property. Thus the decedent, though in fact the sole contributing joint tenant, will be considered as having transferred at the time of death but one-half of the whole of such joint tenancy property. The result is to apply a "source of funds" theory through the application of section 13672 to create the identical result as if each spouse contributed equally. Once such theory of contribution is applied, we no longer have "source of funds" for consideration.

██ It is urged by respondent that the quasi-community nature of each joint tenant's interest continues, with the result that under section 13554.5 there is yet a further one-half of decedent's one-half to be excluded from inheritance taxation. This bootstrap operation cannot be supported. Once the property is recognized as the jointly contributed separate property of each joint tenant, neither spouse's share can be characterized as quasi-community property.[6] ██ The result we reach is to view section 13672 as the specific provision of the law dealing with inheritance tax upon joint tenancy property, the source of which was quasi-community property. Section 13554.5, we conclude, is the general section relative to inheritance taxation of Probate Code, section 201.5 type property, where such property is not specifically dealt with elsewhere in the code. The specific statute relating to a particular subject governs as against a general one sufficiently broad to cover the same subject. (*County of Placer* v. *Aetna Cas. etc. Co.*, 50 Cal.2d 182, 189 [323 P.2d 753].) This does not mean that section 13554.5 has no purpose, for that is far from the result we reach. Section 13554.5 just does not address its provisions to section 13672, joint tenancy property; it does address itself, and accomplishes the identical result for inheritance tax purposes, to all other transfers of quasi-community

---

[6] In *Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003], it is held that a community estate and a joint tenancy cannot exist at the same time in the same property. We believe the same rule applies to quasi-community property.

property between the spouses other than by will or succession.[7] We conclude that the purpose of the Legislature, through these taxing statutes, is to maintain the principle of equality of contribution to the community's enhancement, and this is the result we have reached.

The judgment is reversed.

Kaus, P. J., and Hufstedler, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 4, 1968.

[7]*Inter vivos* transfers, including: transfer with inadequate or lacking consideration; in contemplation of death; possession or enjoyment at or after death; reservations for life of income or interest; promises of transferee to make payments or care; revocable trusts; advancements; avoidance in lieu of probate; homestead interests; powers of appointment; insurance.