[Civ. No. 13238. Third Dist. Mar. 16, 1972.]

Estate of DAVID CARL ROGERS, Deceased.
FLORENCE LEE ROGERS, Individually and as Executrix, etc.,
Plaintiff and Appellant, v.
HOUSTON I. FLOURNOY, as State Controller, etc.,
Defendant and Respondent.

COUNSEL

Fred M. Bollinger for Plaintiff and Appellant.

Myron Siedorf, Robert G. Harvey and Roy Gill for Defendant and Respondent.

OPINION

REGAN, J.—This is an appeal by plaintiff (executrix and widow of the deceased) from the trial court's order affirming the report of the inheritance tax appraiser and denying plaintiff's petition for a refund of gift tax paid.

FACTS[1]

On March 30, 1963, David Carl Rogers, now deceased, was seriously injured in an accident caused by the negligence of another.[2] Rogers thereafter commenced an action in tort to recover damages for personal injuries suffered. Prior to the time the action was brought to trial, Rogers

---

[1]The facts are taken from an agreed statement on appeal. (Cal. Rules of Court, rule 6(a).)

[2]Prior to the accident, the only source of income was the wages of Rogers and his wife. After the accident, neither husband nor wife worked for wages.

and the defendant shipping corporations entered into a compromise settlement on June 1, 1964. On the same date, Rogers, by his guardian ad litem and wife, Florence Rogers, executed a general release discharging the defendants from all liability. Pursuant to the court order authorizing compromise, Rogers received $265,667 in full settlement of all claims.

Rogers died on March 31, 1969, leaving all of his estate to his wife, Florence, who was also named executrix of the will. The State Controller determined that a gift tax should be paid on $113,500 of the proceeds from the settlement on the theory that this sum was the decedent's separate property under section 163.5 of the Civil Code, and had been transmuted into community property by the conduct of Rogers and his wife. In the probate proceedings, the Controller also levied an inheritance tax on the theory that section 13560 of the Revenue and Taxation Code was applicable.[3]

On November 24, 1970, plaintiff Florence Rogers, individually and as executrix of the will of David Carl Rogers, filed an action to recover gift tax paid. On that same date, Mrs. Rogers, as executrix filed her objections to the report of the inheritance tax appraiser. The matters were consolidated for trial, and thereafter the court issued its order affirming report of inheritance tax appraiser and denying the petition for refund of gift tax paid. This appeal followed:

## 1. *Character of Property.*

Plaintiff contends that all of the money received by her husband for damages for personal injuries by way of a compromise settlement was community property, and thus no gift or inheritance tax is owed the state.

Section 163.5 of the Civil Code, as it read in 1964, provided as follows: "All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person."

Plaintiff contends the legislative history and intent preclude the application of this statute to the facts before us since damages received by way of compromise settlement are not damages "awarded."

Section 163.5 of the Civil Code was enacted in 1957. (Stats. 1957, ch. 2334, § 1, p. 4065.) Prior to 1957, any recovery which a married person

---

[3]The major issue in this case involves the character of the money which the decedent received as a settlement. If the money is determined to be community property, then no gift or inheritance tax is due the state and the additional contention raised by plaintiff is moot. If, however, the money is determined to be separate property of Rogers (as did the Controller and trial court), then the question of the constitutionality of section 13560 of the Revenue and Taxation Code is raised.

received as damages for personal injuries suffered was the community property of the injured person and his spouse. It is clear that the legislative purpose in enacting section 163.5 was to relieve an innocent spouse from the harsh penalty resulting from application of the doctrine of imputed contributory negligence. (*Estate of Simoni* (1963) 220 Cal.App.2d 339, 341-343; 1 Cal. Family Lawyer (Cont. Ed. Bar) § 7.26, p. 244, § 7.29, pp. 245-246; 4 Witkin, Summary of Cal. Law (1969 Supp.) Community Property, § 7A, p. 1517.) Since this doctrine is in no way involved in this case, there being no contributory negligence, plaintiff contends the reason for the application of section 163.5 is absent and hence it would be unjust to apply the statute. (Cf. *Estate of Simoni, supra,* 220 Cal.App.2d at p. 343 [Civ. Code, § 163.5 is not applicable with respect to an award by the Industrial Accident Commission].)

Secondly, plaintiff contends that section 163.5 of the Civil Code requires a strict construction in order to reach a just result. Under such construction, the term "award," as used in the statute, does not embrace a settlement. (See *Hobson* v. *Superior Court* (1924) 69 Cal.App. 60, 66 [230 P. 456], where the court states: " 'To award is to adjudge, to give or assign by sentence or judicial determination.' " See also *United States* v. *115.128 Acres of Land, etc.* (D.N.J. 1951) 101 F.Supp. 796, 798.) Thus, she argues a compromise settlement is not an award made by a court of law within the meaning of section 163.5 of the Civil Code, and therefore a compromise agreement should retain its community status.

Plaintiff contends it is significant that in the amended form of the statute the Legislature added the words "pursuant to an agreement for the settlement or compromise of a claim . . . ." (Civ. Code, § 5109 [based on Civ. Code, § 163.5, as added in 1957, and amended by Stats. 1968, ch. 457, § 2, p. 1078].)[4] Had this phraseology been in the statute in 1964, it would have been clear that the Legislature intended a compromise settlement to be separate property, but no such language appears.

Plaintiff also finds some support in the legal literature which indicates that a compromise settlement is not an award under section 163.5 of the Civil Code as it read at that time. Mr. Witkin states: "[T]he section refers only to 'damages . . . awarded,' and leaves some doubt as to whether the unliquidated cause of action is community or separate. The proposed State

[4]The 1968 revision provided that personal injury damages are now community property *except where* awarded to one spouse against the other. One of the unforeseen harmful effects this legislation attempted to alleviate was as follows: "Personal injury damages did not receive the favorable gift and inheritance tax treatment of community property; and, if the recovery were converted into community property by commingling, a gift tax liability could be incurred." (4 Witkin, Summary of Cal. Law (1969 Supp.) Community Property, §§ 7 and 7A, pp. 1516-1517.)

Bar statute covered both, and thereby avoided a further problem which will arise in the event of a settlement without judgment. If the cause of action is still community property, as held by a long list of prior decisions[5] . . . money paid by way of compromise and satisfaction thereof may likewise be regarded as community property, for the statute refers only to 'damages . . . awarded . . . in a civil action.'" (4 Witkin, Summary of Cal. Law (7th ed. 1960) Community Property, § 7, p. 2713; see 45 Cal.L.Rev. 779, 780, fn. 2; 32 State Bar J. 507-508.)

Another author in volume I of The California Family Lawyer (Cont. Ed. Bar) states as follows: "A good case can be stated for maintaining the community nature of a recovery by way of settlement. Civil Code § 163.5 refers only to damages awarded. The legislature intended merely to prevent imputation of negligence between spouses. See § 7.30. It is not necessary to change the property nature of a settlement to prevent this, bcause imputation applies only when the case is tried. Had the legislature intended to change the character of damages obtained through settlement, it could have said so explicitly. This interpretation would avoid imputed negligence and would also preserve the existing property status of settlements.

"However, the Supreme Court has stated that the cause of action and the recovery may not have different property characteristics. In *Zaragosa* v. *Craven* (1949) 33 C.2d 315, 202 P.2d 73, disapproving a prior case to the contrary, the Court rejected a contention that a wife's cause of action is separate property and that the damages recovered are community property. Damages were first held to be community property because they did not come under a statutory definition of separate property (*Moody* v. *Southern Pac. Co*. (1914) 167 C. 786, 141 P. 388), and since damages were community property, the cause of action was also community in nature. This argument may fail when applied to § 163.5, if it is held that the legislature intended to distinguish the cause of action from the recovery by mentioning only the word 'award.'" (§ 7.29, p. 246.)[6]

The precise question before us appeared in *Blankenship* v. *Blankenship* (1963) 212 Cal.App.2d 736, 748 [28 Cal.Rptr 176], but the court found

[5]See, e.g., *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 321 [202 P.2d 73, 6 A.L.R. 2d 461].

[6]Other commentators, however, take the view that, from a practical standpoint, there is no justification for treating settlements differently from judgments. 13 U.C.L.A. L.Rev. 587, 597; 9 Hastings L.J. 291, 304-305: "The practical result of characterizing a settlement as community property might be to continue litigation for no purpose other than to insure that the recovery will be separate property." (P. 305.) And in the same volume of the California Family Lawyer, a different author states: "The statute [Civ. Code, § 163.5] does not mention the cause of action itself or amounts received in compromise of such actions, but it would seem that the intention was probably to make those separate also." (§ 4.21, p. 113.)

it unnecessary to decide the point after waiver by one of the parties. However, in a footnote the court stated: "Apparently no reported California case has dealt with the question whether money received in settlement of a claim for personal injuries constitutes 'damages . . . awarded' within the terms of the above section. Law review writers have answered the question both ways (45 Cal.L.Rev. 780; 9 Hastings L.J. 304)." (P. 748, fn. 4.)

Finally, plaintiff contends that section 163.5 of the Civil Code was a limited exception to the general statutory and case law declaring property acquired by married persons to be community. Since the law does not favor repeal by implication (see, e.g., 1 Sutherland, Statutory Construction (1943 3d ed.) § 2014, pp. 468-470), the statute should be limited to damages awarded in a civil action and not be construed to cover negotiated settlements where there is no problem of imputed negligence between spouses. (Cf. *Estate of Simoni, supra,* 220 Cal.App.2d at p. 343.) In other words, plaintiff contends the section should have no further application than to rectify a flaw in the community property system.

The Controller takes the opposite position and finds support for his views in the legislative history. He agrees that the purpose of the Legislature in enacting section 163.5 of the Civil Code in 1957 was to relieve an innocent spouse of the harsh penalty resulting from the imputed contributory negligence doctrine. He notes, however, that in 1957, and as a part of the same act which added section 163.5, the Legislature also amended section 171c of the Civil Code. (Stats. 1957, ch. 2334, §§ 1 and 2, pp. 4065-4066.) Prior to 1957, section 171c of the Civil Code provided, in part, as follows: "[T]he wife has the management, control and disposition . . . of community property money earned by her, *or community property money damages received by her for personal injuries suffered by her,* until it is commingled with other community property . . . ." (Stats. 1951, ch. 1102, § 1, p. 2860.) (Italics added.)

In 1957, the Legislature amended section 171c of the Civil Code to read, in part, as follows: "[T]he wife has the management, control and disposition . . . of community property money earned by her until it is commingled with other community property."

From this history and reading the two sections together (see *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]), the Controller draws the following conclusion: "When the legislature deleted from section 171c *all* references to money damages received for personal injuries suffered, in the same act which added section 163.5, the legislature clearly evinced an intent that all such damages received were thereafter to be regarded as the injured party's separate property, regardless of whether they were received by way of compromise or after litigation."

Plaintiff, in her opening brief, appears to suggest that a married person's cause of action for personal injuries is community property and the money recovered therefrom does not become separate property until the cause of action is reduced to judgment and award. The Controller disputes that this is the state of the law. He notes that the only California case found holding the cause of action for personal injury to be of a different character from the proceeds of recovery (*Franklin* v. *Franklin* (1945) 67 Cal.App.2d 717 [155 P.2d 637]) was expressly disapproved in *Zaragosa* v. *Craven, supra,* 33 Cal.2d at pages 320-321. A fortiori, the Controller argues, when the Legislature in 1957 changed the character of the recovery to separate property (Civ. Code, § 163.5), the cause of action was also changed to separate property.[7] Thus, section 163.5 applies equally to the proceeds received by way of settlement as well as those received by judgment after litigation. (Cf. *Workman* v. *City of San Diego* (1968) 267 Cal.App.2d 36, 41 [72 Cal.Rptr. 509]; *Hooper* v. *Romero* (1968) 262 Cal.App.2d 574, 579 [68 Cal.Rptr. 749]; *Wilkins* v. *Sawyer* (1965) 232 Cal.App.2d 458, 462 [42 Cal.Rptr. 817].) He concludes this argument as follows: "[T]he assets which may be traced to the personal injury settlment of the present decedent are conceded to be community property at the date of death. However, they are community property because of the inter vivos transfer whereby the decedent transmuted the assets from his separate property to community property of himself and his wife. By operation of law, the funds received by way of settlement of the tort action were originally the separate property of the decedent. The assets which may be traced to proceeds received by way of the settlement agreement are community property, subject to the provisions of Rev. and Tax Code, section 13560."[8] (Cf. *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 570-571 [63 Cal.Rptr. 13, 432 P.2d 709].)

The Controller also argues that plaintiff places undue emphasis upon an isolated phrase ("damages . . . awarded") in contravention of well-established rules of statutory construction. (See 2 Sutherland, Statutory Construction (1943 3d ed.) § 4703, pp. 336-338.) Finally, he argues that section 163.5 of the Civil Code has equal application regardless of whether the spouse of the injured party did or did not negligently contribute to the proximate cause of the injury.

---

[7] *Franklin* and *Zaragosa* were both decided prior to the enactment of section 163.5 of the Civil Code.

[8] This section reads: "If one spouse makes a gift of an interest in separate property to the other and the interest so given, together with an equal interest retained by the donor, becomes their community property, such equal interests shall be treated as held by them as their separate property, and not as community property, for purposes of this part."

The issue presented here is apparently one of first impression. Legal commentators have suggested two different results. However, the little case law there is tends, at least by inference, to support the Controller's position. We think the legislative history also supports this position. We can ascertain no practicable difference between an award and a compromise settlement in situations of this type. We do not think the term "award" should be so narrowly construed as to apply only to judgments rendered after litigation, and thereby exclude compromise agreements from the reach of the statute. Such an interpretation, in our opinion, would unduly restrict the operation of the statute.

We hold that the proceeds which David Rogers received by way of compromise settlement of his personal injury action were originally his separate property with the resulting tax consequences when he transmuted such separate property into community property and devised the remainder to his wife.

■ Since we have sustained the Controller's position that the proceeds received by way of compromise were originally the separate property of decedent, section 13560 of the Revenue and Taxation Code is the controlling statute. As a second contention, plaintiff attacks the constitutionality of this section as denying equal protection of the law.

Section 13551 of the Revenue and Taxation Code provides, in part, as follows: "Upon the death of a spouse: (a) None of the community property transferred to a spouse is subject to this part . . . ."

Section 13560 of the Revenue and Taxation Code, which is an exception to the general rule exempting community property passing to a surviving spouse, provides as follows:

"If one spouse makes a gift of an interest in separate property to the other and the interest so given, together with an equal interest retained by the donor, becomes their community property, such equal interests shall be treated as held by them as their separate property, and not as community property, for purposes of this part."

In *Estate of Rogers* (1966) 245 Cal.App.2d 101, 104-105 [53 Cal.Rptr. 572], the court states: "In the field of taxation the Legislature has wide discretion to classify. As the United States Supreme Court said with reference to the California inheritance tax: 'But we do not find it necessary to discuss the issue thus raised, for it has been repeatedly held by this court that the power of testamentary disposition and the privilege of inheritance are subject to state taxation and state regulation, and that regulatory taxing provi-

sions, even though they produce inequalities in taxation, do not effect an unconstitutional taking of property, unless, as was said in *Dane* v. *Jackson,* 256 U.S. 589, 599 [41 S.Ct. 566, 65 L.Ed. 1107, 1113], the taxing statute "results in such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation,—'to spoliation under the guise of exerting the power of taxing.'" . . . Even assuming that a state does not, under the Constitution of the United States, possess unlimited power to curtail the power of disposition of property at death, or the privilege of receiving it by way of inheritance, there is nevertheless no constitutional guaranty of equality of taxation. The power of the states to discriminate in fixing the amount and incidence of taxation upon inheritances is undoubted. . . . The taxing statute may, therefore, make a classification for purposes of fixing the amount or incidence of the tax, *provided only that all persons subjected to such legislation within the classification are treated with equality, and provided further that the classification itself be rested upon some ground of difference having a fair and substantial relation to the object of the legislation. Magoun* v. *Illinois Trust & Sav. Bank,* 170 U.S. 283 [18 S.Ct. 594, 42 L.Ed. 1037], *supra*; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412 [40 S.Ct. 560, 64 L.Ed. 989].'" (Italics added.)

Plaintiff contends section 13560 of the Revenue and Taxation Code violates the principles set forth in the last paragraph of *Rogers* cited above. In particular, she contends that the classification of community property into two distinct types for inheritance tax purposes is invalid since the classification has no reasonabe basis or foundation, and since the section does not operate equally and uniformly as to all within a defined class. (Cf. *Estate of Legatos* (1969) 1 Cal.App.3d 657 [81 Cal.Rptr. 910].) In this respect, plaintiff contends that community property transmuted into such by way of gift of separate property from one of the spouses to the other has all the attributes and characteristics of other community property.

We cannot agree with plaintiff's contention. We think the legislative classification is based upon rational differences in relation to the subject matter and thus the statute suffers from no constitutional infirmity. It is important to bear in mind the origin of the two types of community property (see *Estate of Granniss* (1904) 142 Cal. 1, 4 [75 P. 324]) and the distinctions between them for the purposes of the inheritance tax law.

First, the Civil Code defines the separate property of the wife (§ 5107), the separate property of the husband (§ 5108), and the separate property

of either of the parties (§ 5109). The Civil Code then defines community property as all other property acquired during the marriage. (§ 5110.)

Where a married person acquires separate property, he may convert the same to the community property of himself and his spouse. (*Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 757-758 [146 P.2d 905].) However, this property is community only because of the voluntary act of the spouse transmuting his separate property to community property since neither the husband nor the wife has any interest in the separate property of the other. (Civ. Code, § 5102.) Thus, the character of this community property (as distinguishable from § 5110 community property) is determined by the voluntary act of one spouse, not by reason of the manner in which the property was originally acquired. Furthermore, when separate property is transmuted into community property, the benefiting spouse receives a property interest which the spouse did not previously possess. In view of the above, we think such a legislative classification is reasonable and based upon rational differences in relation to the subject matter.

Turning to the inheritance tax law itself, we find the following: One-half of the separate property transferred to the surviving spouse is subject to the inheritance tax. (Rev. & Tax. Code, § 13805.) Community property (under Civ. Code, § 5110) transferred to the surviving spouse is exempt from the inheritance tax. (Rev. & Tax. Code, § 13551.) Section 13560 of the Revenue and Taxation Code imposes a tax upon the transfer of a portion of the property which was originally the separate property of one of the spouses. Thus, the enactment of section 13560 is merely an attempt by the Legislature to tax with a reasonable degree of uniformity the transfer of all property which was *originally acquired as the separate property of one of the spouses*. (See 40 State Bar J. 706, 710-711.)

Section 13560 makes no distinction between a surviving husband and a surviving wife. (Cf. *Estate of Legatos, supra*, 1 Cal.App.3d 657.) Moreover, the section applies equally to all married persons who transmute their separate property to community property. (See *Roth Drug, Inc.* v. *Johnson* (1936) 13 Cal.App.2d 720 [57 P.2d 1022]; see also *Estate of Newton* (1950) 35 Cal.2d 830, 848 [221 P.2d 952, 19 A.L.R.2d 1399] [concurring opinion by Traynor, J.].)

■ Finally, section 13560 does not impose double taxation. If a married person should decide to transmute his separate property to community property, he makes a gift of an undivided one-half interest in the property, and it is this transfer which is subject to the gift tax. Should the decedent make a further transfer of his remaining one-half interest in the property to his spouse, by will, it is the transfer of this remaining one-half interest

which is subject to taxation under section 13560. Thus, the tax is imposed upon the transfer of separate and distinct interests in the property.

The orders of the trial court are affirmed.

Friedman, Acting P. J., and White, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1972.

*Assigned by the Chairman of the Judicial Council.