249 F.2d 73
 Woodrow W. REYNOLDS, on Behalf of Himself and All Other Taxpayers Similarly Situated, Appellant,
v.
Hugh WADE, as Treasurer of the Territory of Alaska, John McKinney, as Director of Finance of the Territory of Alaska, Don M. Dafoe as Commissioner of Education of Alaska and A. H. Ziegler, William Whitehead, Mrs. James March, Mrs. Myra Rank and Robert F. Baldwin as Members of the Board of Education of the Territory of Alaska, Appellees.
 No. 15135.
 United States Court of Appeals Ninth Circuit.
 October 21, 1957.
 
 Howard D. Stabler, Juneau, Alaska, Henry C. Clausen, Richard G. Burns, San Francisco, Cal., for appellant.
 J. Gerald Williams, Atty. Gen., Edward A. Merdes, Henry J. Camarot, Deputy Attys. Gen., for appellees.
 Before ORR, LEMMON and FEE, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 The District Court of Alaska dismissed an action brought by appellant, a taxpayer, on behalf of himself and others similarly situated, to restrain certain officials of the Territory of Alaska from making alleged unlawful expenditures of territorial funds, and from administering a territorial statute concerned with publicly furnished transportation to non-public schools.
 
 
 2
 It seems to be agreed that in the event the appellant has capacity to sue, under Alaska law, the allegations of his complaint are sufficient to require that he be permitted to proceed with his action.[1]
 
 
 3
 The right of a taxpayer to bring an action to enjoin officials from proceeding in an unlawful manner is recognized in an overwhelming number of states and two territories.[2] Appellees take the position that we are not at liberty, in this circuit, to travel the road charted by the numerous state decisions on the subject, because of a road block thrown up in the case of Sheldon v. Griffin, 9 Cir., 1949, 174 F.2d 382, 383. This contention was sustained by the trial court. To the contrary we conclude that Sheldon v. Griffin does not present such an obstacle because of a different factual situation existing in the instant case.
 
 
 4
 In the Griffin case the plaintiff, alleging that he was a citizen and taxpayer of Alaska, sought to have an amendment to the Unemployment Compensation Code of Alaska declared invalid for asserted irregularities in the course of the measure's passage. The amendment provided for a merit system of credits upon employers' contributions for unemployment compensation, and also reduced the waiting period for unemployment benefits. This court held that the complaint presented no justiciable controversy, because:
 
 
 5
 "* * * The amendment under attack adds nothing to the burden of the taxpayers of Alaska. The unemployment compensation fund administered by the Commission is made up of contributions exacted from employers in accordance with regulations prescribed by the Commission, plus fines and penalties collected pursuant to the provisions of the Act. Alaska Compiled Laws 1949, § 51-5-5. There is nothing in the pleading or proof to indicate that the plaintiff has a particular right of his own to which injury is threatened, or any interest distinguishable from that of the general public in the administration of the law. To entitle himself to be heard he is obliged to demonstrate not only that the statute he attacks is void but that he suffers or is in imminent danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some remote or indefinite way in common with the generality of people. Frothingham v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078. * * *" (Italics supplied.)
 
 
 6
 It will be noted that this court in reaching its decision relied in part on the doctrine expounded in the case of Commonwealth of Massachusetts (Frothingham) v. Mellon, 1932, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. We think the reliance was proper, inasmuch as there was no relation between the plaintiff as a taxpayer and the effect of the amendment to the Unemployment Compensation Code. There, the plaintiff failed to show special injury resulting to him from the operation of the new measure. His attempt to set out some indefinite relationship in common with people generally was not enough.
 
 
 7
 Since the creation of a merit system for contributions to the unemployment compensation fund, and the reduction of the waiting period for unemployment benefits did not add to the taxpayer's burden, a mere citizenship and taxpaying status, without more, did not justify a challenge by the citizen taxpayer.
 
 
 8
 The instant case is readily distinguishable in that the statute in question puts a burden upon the Territorial taxpayer. The administration of the transportation to non-public schools is financed through the General Fund, into which the general tax revenues of Alaska citizens and residents flow. Here, the plaintiff and those similarly situated as taxpayers do suffer injury when there is an unlawful expenditure of public funds.
 
 
 9
 The question of whether an Alaskan taxpayer, suing in his private capacity, has standing to challenge the validity of a statute enacted by the Alaskan Territorial Legislature, and enjoin funds appropriated for its administration, is one of first impression in this circuit.
 
 
 10
 The great majority of states allow a taxpayer to sue to enjoin state officials from alleged unlawful expenditure of tax-derived state funds.[3] The principle that the taxpayers are the equitable owners of public funds is often stated to support the majority rule. Also, the decisions allowing taxpayers' suits against municipalities and counties are often employed as authority to sustain taxpayers' actions against states.
 
 
 11
 The decisions denying this type of suit distinguish between a taxpayer's suit against a municipality, where the action is considered analogous to a stockholder's action against a private corporation, and a suit against a state, where the sovereign of the state is in question.[4]
 
 
 12
 The law is settled that a Federal taxpayer cannot sue to enjoin alleged unlawful expenditure of funds from the Federal treasury in the absence of a showing of a direct, special injury. Commonwealth of Massachusetts (Frothingham) v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. There, an original action in the Supreme Court by Massachusetts against the Secretary of the Treasury, challenging the constitutionality of a Congressional statute, was decided together with a similar action by a Federal taxpayer. The Supreme Court restated its rule allowing taxpayers' suits against municipalities, approving the reasoning employed, but held that the relation of a taxpayer of the United States to the Federal Government was so minute and indeterminable that no basis was afforded for equitable relief.
 
 
 13
 The Supreme Court announced the doctrine that "The party who invokes the power must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." 262 U.S. at page 488, 43 S.Ct. at page 601.
 
 
 14
 The principle announced in Commonwealth of Massachusetts (Frothingham) v. Mellon has no application to the instant case; here, a justiciable controversy is present. The basis of the Mellon doctrine lies in the infinitesimal relationship between the Federal taxpayer and the Federal treasury. When we compare the interest of a Federal taxpayer, who is one of over one hundred and sixty million, with the interest of an Alaskan taxpayer with a population of less than 130,000, the distinction, though one of degree, is obvious. The rationale of the cases allowing taxpayers' actions against municipalities is clearly applicable in the Alaskan situation.
 
 
 15
 In Buscaglia v. District Court of San Juan, 1 Cir., 1944, 145 F.2d 274, 284, the Court of Appeals allowed a taxpayer's action against Puerto Rico officials administering an alleged invalid law. There, the court distinguished Mellon by comparing the infinitesimal relationship of the Federal taxpayer with the Federal treasury, and the much closer relationship of the Puerto Rican taxpayer with his government. The court there stated:
 
 
 16
 "* * * The language of the court in Commonwealth of Massachusetts v. Mellon was directed to a case involving the relation of an individual taxpayer to the Federal Government. The interest of such an individual, as affected by an alleged illegal expenditure of federal funds, was regarded as so minute, indeterminable, and remote, as not to present any substantial case or controversy in the constitutional sense between the plaintiff and the Secretary of the Treasury. But the relation of a taxpayer to the government of Puerto Rico is, as a matter of degree, not so attenuated; and despite any purely logical arguments which might be made from some of the language in Commonwealth of Massachusetts v. Mellon, we have no doubt that it is within the competence of the territorial government, either by legislative act or judicial decision, to authorize a taxpayer's bill in equity in a case like the present without trenching upon the doctrine of separation of powers implicitly in the Organic Act. * * *"
 
 
 17
 The sparse Alaskan population indicates even a much greater pecuniary interest of the Alaskan taxpayer than his Puerto Rican counterpart.
 
 
 18
 Employing much the same reasoning, the courts of Hawaii have held that a taxpayer may sue to enjoin the administration of an unconstitutional statute. Castle v. Kapena, 1883, 5 Haw. 27; Lucas v. American Hawaiian E. & C. Co., 1904, 16 Haw. 80; Castle v. (Atkinson) Secretary of Hawaii, 1905, 16 Haw. 769.
 
 
 19
 In Valentine v. Robertson, 9 Cir., 1924, 300 F. 521, this court held that an Alaskan taxpayer could invoke the aid of a court of equity to restrain an unlawful expenditure of the City of Juneau.
 
 
 20
 We conclude that an Alaskan taxpayer should be allowed to challenge alleged misapplication of funds, either municipal or Territorial, in order that the taxpaying public may have recourse to a prompt remedy to prevent irremediable public injury.
 
 
 21
 The judgment of the trial court dismissing the complaint and awarding attorney's fees to appellees (defendants) is reversed.
 
 
 
 Notes:
 
 
 [1]
 The complaint alleges the following:
 "1. This action is in equity to restrain an unlawful and unconstitutional expenditure of public funds and arising also under the First, Fifth, and Fourteenth Amendments to the United States Constitution and Sections 1981, 1982, and 1983 of Title 42 of the United States Code, to redress the deprivations under color of territorial law, of a right secured by the Constitution of the United States and made applicable to the Territory of Alaska by Section 23 of Title 48 of the United States Code, all of which more fully appears hereinafter. The taxpayer plaintiff of the Territory of Alaska sues to restrain certain territorial officials from disposing of funds appropriated by the Territorial Legislature for the transportation of children to parochial and church schools. * * *
 "2. At all times mentioned herein, plaintiff has been and is the owner of real and personal property located in the Juneau-Douglas Independent School District and in the Territory of Alaska, and a citizen and resident and taxpayer thereof; and assessed for and liable to pay taxes to the Territory of Alaska as provided by law; and within one year before the commencement of this action has paid a Territorial Income Tax, a resident fisherman's license tax, and automobile license tax, a $7.50 school tax and a hunting license tax to said territory.
 "3. [The citizen, resident taxpayers of said Territory number many thousands. Plaintiff and all of said persons are in the same class and are affected by all the matters and things mentioned hereinafter and are subject to like injury and damage as the injuries complained of in plaintiff's complaint.] There are common questions of law and of fact affecting their rights and a common relief is sought. These persons united in interest with plaintiff are too numerous to make it practical to bring them before the Court, and plaintiff, therefore, brings this action on his own behalf as such owner, resident, citizen and taxpayer, and also in behalf of each and all the said citizens and residents and taxpayers of said school district and Territory."
 The statute challenged is entitled, "An Act to promote the public health, safety, and welfare by providing transportation for children attending schools in compliance with compulsory education laws." [Laws 1955, c. 39.] Briefly, the Act provided publicly furnished transportation to non-public schools where the distance is comparable with the distances over which children attending public schools are publicly transported. The statute is to be financed by funds appropriated for that purpose by the Territorial Legislature.
 The complaint further alleged that the Territorial Legislature, Laws 1955, 1st Ex.Sess. page 59, at page 68, enacted a general appropriation bill stipulating monies from the Territory's general funds, derived from Territory taxation, part of which was allocated for transportation to non-public schools under the above described statute.
 The complaint prayed that the transportation measure, as well as the portion of the 1955 territorial appropriation for its administration, be declared null and void. Appropriate injunctive relief was also requested.
 
 
 [2]
 See 52 Am.Jur., Taxpayers' Actions, § 6 (1944); 11 Am.Jur., Const.Law, § 116 (1937); 1929, 58 A.L.R. 588; and cases cited therein
 
 
 [3]
 See note 2 supra
 
 
 [4]
 See Annotations of authorities listed in note 2 supra