SARTAIN, Judge.
This is a suit for declaratory judgment brought by the various plaintiffs herein seeking a declaration of unconstitutionality of Act 719 of 1975 which provides for the allocation and distribution of the Revenue Sharing Fund established by Article 7, Section 26, of the Louisiana Constitution of 1974. The trial judge upheld the constitutionality of the act and dismissed plaintiffs’ suit, thus prompting this appeal. We affirm for reasons stated herein.
HISTORICAL BACKGROUND
In order to present this dispute in proper perspective a brief overview of the past history of Louisiana’s ad valorem taxation system is necessary.
In response to depressed economic conditions the Louisiana Constitution during the administration of Governor Huey P. Long was amended to provide an exemption from state, parish and local taxes for the bonafide homestead of each head of household up to an assessed value of $2,000.00. Subsequent amendments increased this amount to $5,000.00 for certain veterans.
The Legislature, recognizing the effect of the exemption on local governments, created the Property Tax Relief Fund pursuant to constitutional authorization, which fund was to be derived from other state taxes. This fund was disputed among the various parishes of the state on the basis of the losses incurred by local governmental units as a result of the homestead exemption.
The distribution of the Property Tax Relief Fund was challenged on the grounds that it was unconstitutional in that it denied equal protection of the laws to certain parishes. The distribution formula was so declared in Levy v. Parker, 346 F.Supp. 897 (1972), affirmed 411 U.S. 978, 93 S.Ct. 2266, 36 L.Ed.2d 955. Because of the lack of any uniform system of assessment of property subject to ad valorem taxation and because the disbursement of the fund depended on actual losses claimed by the parishes, the court concluded that the distribu *446 tion of the fund resulted in arbitrary inequality and discrimination. The court noted that Louisiana’s system denied homestead owners in Orleans Parish and those who pay alcoholic beverage and income taxation (from which a portion of the Property Tax Relief Fund was derived) the same treatment accorded similarly situated taxpayers in other parishes thereby adversely affecting the benefits provided by the local government. The court held that the combination of unequal assessments, limited taxing power and payments from the fund on the basis of local millage rates resulted in an overall system which breached the constitutional rights of the plaintiffs.
In response to the Levy decision, to effect compliance therewith, a special session of the Louisiana Legislature was convened and passed Act No. 18 of the extraordinary session of 1972 proposing a constitutional amendment, subsequently adopted by the voters, to amend Article X, Section 4 of the Constitution of 1921 eliminating the property Tax Relief Fund and to add Section 10B to provide for the establishment and distribution of revenue sharing fund in the amount of $80,000,000.00 with provisions for additional allocations. The following year the Legislature enacted Act No. 153 of 1973 distributing the Revenue Sharing Fund provided for in the constitution according to the following formula found in Section 3 of the act:
Section 3. The amount to be distributed annually to each parish from the Revenue Sharing Fund shall be the sum of (a) an amount equal to that percentage of eighty percent of the total fund which is equal to the ratio which the population of the parish bears to the total state population, and (b) an amount equal to that percentage of twenty percent of the total fund which is equal to the ratio which the number of homesteads in the parish bears to the total number of homesteads in the state.
Subsequently the voters of Louisiana adopted a new state constitution containing revised provisions governing the Revenue Sharing Fund. Article 7, Section 26, of the Constitution of 1974 raised the above legislative formula for distribution insofar as it was based on percentages of homesteads and population in each parish to constitutional status and further increased the amount of the fund to $90,000,000.00. Article 7, Section 26(C) states:
(C) Distribution Formula. The revenue sharing fund shall be distributed annually as provided by law solely on the basis of population and number of homesteads in each parish in proportion to population and the number of homesteads throughout the state. Unless otherwise provided by law, population statistics of the last federal decennial census shall be utilized for this purpose. After deductions in each parish for retirement systems and commissions as authorized by law, the remaining funds, to the extent available, shall be distributed by first priority to the tax recipient bodies within the parish, as defined by law, to offset current losses because of homestead exemptions granted in this Article. Any balance remaining in a parish distribution shall be allocated to the municipalities and tax recipient bodies within each parish as provided by law.
The new constitution also contained revised provisions governing homestead exemptions (Article 7, Section 21) and provided for a system of uniform assessment (Article 7, Section 18), but by virtue of Article 14, Section 13, these provisions were not to become effective until January 1 of the year following the end of three years after the effective date of the new constitution. Until such time as the above provisions were to become effective the provisions of the Constitution of 1921 pertaining to these matters were to remain in effect. Thus the actual homestead exemption is governed at the present time by Article 10, Section 4(9).
*447 FACTS OF THE PRESENT CASE
In accordance with the provisions of Article 7, Section 26, of the Constitution of 1974, the Legislature adopted Act 719 of 1975 allocating $90,000,000.00 to the Revenue Sharing Fund to be distributed pursuant to the following formula:
Section 3. The amount to be distributed annually to each parish from the revenue sharing fund shall be the sum of (a) an amount equal to that percentage of eighty percent of the total fund which is equal to the ratio which the population of the parish bears to the total state population, and (b) an amount equal to that percentage of twenty percent of the total fund which is equal to the ratio which the number of homesteads in the parish bears to the total number of homesteads in the state. As used in this Section, the term “homesteads” shall mean that enumeration of homestead exemption claims filed with the assessors as determined by the Louisiana Tax Commission as of November fifteenth of the previous calendar year.
As a result of the above formula, Calca-sieu Parish received a total appropriation for 1975-1976 in the amount of $3,583,080.-00. The amount available for distribution through the recipient bodies after allowance for Sheriff’s commissions and retirement contributions was $3,044,150.00. The amount of tax revenue Calcasieu claims to have lost due to homestead exemptions allowed in the parish is $3,491,149.00. As can readily be seen, Calcasieu’s portion of the Revenue Sharing Fund amounts to only eighty-seven percent of the revenues claimed lost. There were no excess funds to be distributed among the municipalities and tax recipient bodies within the parish.
Plaintiffs herein argue for various reasons that the formula in Act 719 of 1975 which failed to reimburse revenue losses attributable to homestead exemptions in full results in a denial of equal protection of the laws, invalidates taxes and impairs contractual obligations.
EQUAL PROTECTION
Calcasieu Parish and its various political subdivisions, as well as taxpayers situated therein, argue that the formula for revenue distribution deprives them pf equal protection of the laws inasmuch as the majority of parishes in the state are reimbursed to the full extent of losses attributable to the homestead exemption. Not only are homestead exemptions reimbursed in full, the formula yields to these parishes “excuses”, or amounts greater than that needed for homestead exemption reimbursements, which excesses are distributed among municipalities and other recipient bodies within the parish.
In applying the guarantee of equal protection to state revenue sharing plans, the court in Levy v. Parker, supra, stated:
The Equal Protection Clause, therefore, reaches all state actions. Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L. Ed.2d 5, 19. It assures equality not only in the imposition but also in the distribution of state revenues. Hess v. Mullaney, 1954, 213 F.2d 635, 15 Alaska 40. Even largesse must be dispensed with an even hand. Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Tax relief funds, designed to assist localities by making funds raised by state taxes available to local governmental agencies, must be administered by statute and in practice so as to avoid that governmental favoritism to one person over another that the Fourteenth Amendment was designed to proscribe. The failure to accord equal protection to all persons may not be justified by the sophistry that the receipt of funds from the legislature is a “privilege” and not a “right.” See Sherbert v. Verner, 1963, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965. (346 F.Supp. 897 at page 903.)
The court further noted:
The presumption of reasonableness is of course with the state. Metropolitan Cas *448 ualty Ins. Co. v. Brownell, 1935, 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070. Unless it can be shown that the state’s failure to treat all alike has no rational basis, the state’s action must be sustained. Id., McGowan v. Maryland, 1961, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. (346 F.Supp. 897 at page 901)
In the present case Calcasieu’s appropriation was calculated by the same formula as that of all other parishes in the state. It is true that such appropriations were only eighty-seven percent of the losses claimed by Calcasieu, whereas the formula resulted in appropriations to other parishes far greater than losses those parishes claimed as a result of homestead exemption.
We find no merit to this argument advanced by plaintiffs as we note that the degree of "loss” or “excess” experienced by a parish is directly dependent upon the amount each parish claims to have lost as a result of the homestead exemption. These “actual” losses are determined by multiplying the local millage rates by the value of the exempt property. The value of exempt property depends on local assessment practices candidly described in Levy, supra, as “assessment-any-basis-you-choose.” Thus, the actual losses claimed by a parish are subject to manipulation by the use of high millage rates coupled with artificially low assessments within the parish. This is precisely what the court in Levy, supra, found objectionable, that distributions were made from the property tax relief fund on the basis of losses claimed by a parish. Yet, plaintiffs herein ask us to find that they have been treated unfairly because these same losses were not reimbursed one hundred percent. We feel that in light of Levy, supra, the extent of reimbursement of homestead exemptions, as long as there exists no uniform system of assessment, is irrelevant. The paramount factor is the implementation of a formula for distribution based on relevant variables not subject to the whim of local political practices.
The formula questioned herein bases revenue distribution on weighted percentages of population and number of homesteads within each parish. The formula does not consider, nor was it designed to consider, the amount of losses a parish claims as a result of homestead exemptions. The latter figure is one which the court found objectionable in Levy, supra, as it was subject to gross manipulation. The former figures on the other hand are not subject to the type of manipulation denounced in Levy, supra, as they are not related in any way to current assessment practices. Absent a controlled system of assessment, the amounts claimed to be lost by parishes as a result of homestead exemptions simply can not be considered in any determination of inequity.
Plaintiffs argue that the weight assigned to each of the variables (80% to population and 20% to homesteads) is arbitrary. However, plaintiffs overlook that the presumption of reasonableness is with the state. The only offering plaintiffs have made to support their position that the formula is arbitrary is a showing that the formula fails to reimburse homestead exemptions in Calcasieu Parish one hundred percent, a showing which we have already pointed out is not legally relevant in light of Levy, supra.
Accordingly, we conclude that Calcasieu Parish has been treated in a manner consistent with that of the treatment of all other parishes in this state. That treatment is founded in a formula which furthers a legitimate state interest and is rationally related to the furtherance of those interests. The state has a definite interest in providing funds to the various parishes to support local governmental programs and it has enacted a formula not subject to self-serving manipulation through which those funds may be distributed. Thus we find no violation of the equal protection *449 laws with respect to the treatment received by plaintiffs herein.
INVALIDATION OF TAXES AND IMPAIRMENT OF CONTRACT
The provisions presently governing homestead exemptions, Article 10, Section 4, of the Constitution of 1921, contain the following language:
The provisions of this paragraph shall in no way be construed or applied in such a manner as to: (a) invalidate taxes authorized and imposed prior to the effective date hereof, or (b) impair the obligations, validity or security of any bonds or other debt obligations authorized prior to such date, or (c) make inapplicable any other provisions of this Constitution or laws of this State, in force and effect on such effective date, to the extent that such provisions grant homesteads exemption from taxation.
It is argued by plaintiffs that since they are not reimbursed for the losses incurred as a result of homestead exemption these taxes are invalidated. They further argue that certain bond obligations have been impaired since debt service on said bonds is paid in part from advalorem taxes, the funds from which are significantly reduced as a result of failure to reimburse all homestead exemption losses.
We disagree with plaintiff that taxes have been invalidated within the meaning of the above cited constitutional provisions. The core of plaintiffs’ argument here is actually a complaint directed against the homestead exemption itself, for it is the exemption which reduces revenue from ad-valorem taxes and not the Revenue Sharing Fund (which actually increases available revenue from advalorem taxes). It can not be argued that taxes are invalidated merely because the present revenue generated from those taxes has been reduced in some instances. The system of advalorem taxation is still available to the governing authorities and by adjustment in millage pursuant to law governing authorities can further increase tax revenues resulting from that system. Furthermore, while actual figures are not before us, we feel that a comparison of the revenues generated by advalorem taxation with those lost due to homestead exemptions would indeed indicate that advalorem property taxes are a vital and significant source of governmental revenues.
We likewise disagree with plaintiffs’ argument that the validity of security on bonds issued by the governmental authorities has been impaired. Plaintiffs are in agreement with defendants that reimbursement from the property tax relief fund (and subsequently the Revenue Sharing Fund) were never pledged as security for any issued bonds. However, plaintiffs argue that when bonds are sold the purchaser is aware of certain “boundaries” within which security on said bonds will lie. It is argued that since advalorem taxes are not fully reimbursed the total available revenue with which to secure the bonds is reduced, thereby causing a reduction in the “boundaries” which the purchaser understood to exist at the time they purchased the bonds, thus violating the contract clause of both Article 1, Section 10, of the United States Constitution and Article 1, Section 23, of the Louisiana Constitution of 1974.
We find no merit to plaintiffs’ argument insofar as it pertains to the impairment of contracts inasmuch as reimbursements have never been pledged as security for these contracts and thus do not form a part of them. With respect to the impairment of security we find such a determination to be one of fact and while plaintiffs have shown a reduction in available funds over those of prior years, there has been no evidence offered to show that such reduction is to the extent that security on the bonds themselves has been in any way affected. We can not equate the mere reduction of revenues with security impairment without a showing of actual *450 circumstances indicating a real danger to the ability of municipalities to satisfy present bond obligations. No such showing has been made herein.
ON BEHALF OF THE CITY OF LAKE CHARLES
The City of Lake Charles has filed a brief wherein it argues that it is entitled by law to participate in appropriations from the Revenue Sharing Fund. We find no merit to such contentions in light of subsequent amendments to Article 12, Section IS (Eighth), of the Louisiana Constitution of 1921. This article was amended in 1966 at which time the City of Lake Charles was deleted from said provisions. As a result of this amendment. Lake Charles was no longer entitled to be treated as a separate parish rather than a municipality. Thus, as a municipality we find the City of Lake Charles entitled to participate in the Revenue Sharing Fund as provided for in Article 7, Section 26(C), that is, as a body eligible to receive allocations of remaining balances after losses from homestead exemptions have been satisfied. Aside from this participation in the sharing of excess funds, we find no independent right on behalf of the City of Lake Charles to further participation. We feel as did the trial judge that the City’s remedy is an appeal to the legislative process if additional funds are desired.
ALLEGED SRS 275 FORM ERROR
Calcasieu Parish has advanced an argument that double deductions for sheriff’s commissions and retirement contributions have been erroneously made on the SRS 275 forms of various parishes (these are the forms upon which are calculated “excesses”, if any, a parish will receive after “losses” from homestead exemptions have been satisfied out of a parish’s appropriation from the Revenue Sharing Fund.) We find no standing on behalf of Calca-sieu Parish to make this challenge inasmuch as only one set of deductions for these items was made on Calcasieu’s own SRS form. Furthermore, these deductions are in no way related to the initial appropriations received by the parishes from the Revenue Sharing Fund.
Accordingly, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant’s cost.
AFFIRMED.